[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action to dissolve the marriage of the parties on the ground of irretrievable breakdown. Each party was represented by legal counsel. They presented testimony and exhibits on October 2, 2002.
The more credible evidence leads to the following factual findings. The plaintiff and the defendant, whose maiden name was Joyce M. Barcley, married August 23, 1986, in Oxford, Connecticut. They have resided in the State of Connecticut continuously for more than one year next before the date of the complaint. There is one minor child issue of the marriage, to wit: Eric Robert Jolly, born May 4, 1990. No other minor children have been born to the wife since the date of the marriage. Neither the child nor the parties have received financial support during the marriage from the State of Connecticut or any municipality thereof. The marriage of the parties has broken down irretrievably.
The plaintiff husband will be forty-nine years old this month. He attained an associates degree in business from Quinnipiac College in recent years. The plaintiff worked for a succession of corporations in the tool setting trade until he began working for his present employer, Dynacept Corporation, in 1988. His current job title is senior project manager. Typically, the plaintiff works for his employer in Brewster, New York five days a week from 7 a.m. to 4:30 p.m. Because the company is doing well, the plaintiff considers his job to be secure for the foreseeable future.
The plaintiff earns about $59,000 per year from his base salary plus small bonuses. The company offers no pension plan. The plaintiff started contributing to a 401 (k) plan about one year ago with a current value of $1,100. Medical insurance is available to the plaintiff through his employment.
The plaintiff has arthritis in both his hips. He takes medication a few times a week to reduce the effects of the inflammation. Hip replacement CT Page 12754 surgery may be necessary in the future. The plaintiff has engaged in counseling or therapy with a social worker, psychologist or psychiatrist on and off since the 1970s. He has been with his current therapist for two years with an out-of-pocket cost of about $65 per week. At various times, the purposes of the therapy have included personality and skills assessment, dealing with stresses of the marriage and the divorce, and emotional support. The plaintiff has been taking antidepressant medication for the last four months. No health problems impede the plaintiff's ability to work at his current employment.
The defendant wife will be forty-seven years old this month. Her educational level is comparable to that of the plaintiff. She has a couple of years of post-secondary higher education. At the time of the marriage, the defendant worked as a sales and customer service representative at Food Automated Technology. Like the plaintiff, however, the defendant has worked primarily for one employer throughout the marriage. She is now the assistant director at that business — The Workplace, Inc. — where she earns $60,800 per year.
The defendant participates in a pension plan. For several years, she has contributed to a 403b tax-deferred savings plan. During the marriage, the parties agreed to save retirement moneys into the defendant's 403b plan for their mutual benefit in the future. It was not until the commencement of these divorce proceedings that the plaintiff began to contribute separately to his 401 (k) plan. The 403b asset is worth $48,708. Because the parties feel that the defendant has the better medical insurance plan through her employment, she now provides health insurance for the entire family.
The defendant has a congenital problem with her back in the form of scoliosis with a progressive rotation of her ribs. This problem might lead to the need for surgery in the future. The back problem does not limit the defendant's income earning ability at this time. She is otherwise in good health.
The parties' minor child, Eric, was born six weeks premature on May 4, 1990. He was born with an esophageal fistula that required emergency surgery. His recovery from the surgery was threatened by a serious infection. The child spent a lot of his pre-school years seeing specialists to deal with follow-ups and complications of his early health problems. Although the child was born by Cesarean section, the defendant was able to return to full-time employment three months after the birth. To avoid the danger of further infection to the child, the defendant's parents provided the daily childcare for Eric in his early years. Fortunately, the child made a full recovery and suffers no developmental CT Page 12755 delays at this time. He is now in good health. Each party acknowledges that the other party has a warm and loving relationship with the child.
The parties lived together for two years prior to their marriage in the defendant's solely owned house at 11 Winter Street, Derby, Connecticut. On August 7, 1986, the defendant sold that house, realizing $99,900 in net proceeds. She also received a gift of $10,000 from her parents in June of that year. Using the defendant's $110,000, the parties jointly bought a home at 172 Loughlin Road in Oxford on August 7, 1986, at a cost of $183,000. They incurred a mortgage of $72,000 at that time. The parties used the equity from the sale of the Loughlin Road property to buy their current residence on July 14, 1987. The current marital residence at 167 Moose Hill Road, Oxford cost $246,000. Its value today is between $275,000 and $300,000. The outstanding first mortgage is between $85,000 and $88,000. The parties bought a time-share at the Cascades in Orlando, Florida using a second mortgage on the marital residence. The current balance owed on that loan is about $10,000. For purposes of these proceedings, the court values the net equity in the home at $190,000.
As part of their estate plan, the defendant's parents have provided to their daughter and her husband $50,000 since November, 1993, in $10,000 and $20,000 increments, to be applied to the paydown of the mortgage on the parties' house. From the outset of the marriage the defendant's parents have also provided miscellaneous gifts for auto and furniture purchases, home repairs, a trip to Orlando, and an assortment of other reasons totaling another $20,000. In addition, they gifted $20,000 to the defendant in July, 1999, with express instructions that she was not to use the gift to pay down the mortgage. The defendant used the 1999 gift for eye surgery, purchase of a time-share at the Fountains in Orlando, Florida, and savings. The defendant's parents also forgave a loan they had made to her prior to the marriage in the amount of $13,000. With the exception of the 1999 gift to the defendant in the amount of $20,000 and the forgiveness of the premarital loan, the gifts of the defendant's parents were directed to the mutual benefit of the parties and were commingled during the marriage.
The plaintiff asserts that because he has earned about $90,000 more money than the defendant during the marriage, he should enjoy some extra consideration in the division of the marital assets. The plaintiff arrived at the $90,000 sum by reviewing the parties' tax returns for many of the years of the marriage and by reviewing the Social Security entitlement statements sent to the parties by the Social Security Administration. The plaintiff's calculations are flawed. He did not allow for the fact that all the 403b contributions were deducted from the defendant's income. Also, a daycare allowance for the last several years CT Page 12756 was a nontaxable part of the defendant's compensation. The income of the defendant as shown on the tax returns does not tell the whole story. The testimony of the parties showed that both of them worked full-time outside the home throughout the marriage. Although the defendant was the primary caretaker of the child, both parties contributed actively to the raising of their child and the maintaining of the house and grounds.
Both parties cited problems in communicating as a substantial factor in the breakdown of the marriage. The plaintiff pictured the defendant as sexually cold and unresponsive to him. The defendant described the plaintiff as short-tempered and manipulative. Each party related instances and examples of alleged ill usage at the hands of the other during the marriage. Testimony in a divorce trial does not usually bring out the best in each party. Nevertheless, these two parties came across as decent human beings, who are regretful over the failure of their marriage. They are caring and committed parents to their child. The court finds that neither party bears the primary burden of fault for the breakdown of the marriage.
The parties held the following assets and debts at the time of the dissolution hearing:
A. Plaintiff's Assets
1. MT Bank checking account — $300
 2. Northwest Mutual life insurance policy (face amount $172,741) — $38,000
3. Triple Plastics, Inc. 401 (k) — $1,100
B. Defendant's Assets
1. Fountains, Orlando, FL, time share — $12,000
2. Webster Bank savings account — $200
3. Bridgeport Credit Union — $675
4. People's Bank checking account — $3,800
5. 403b account — $48,700
6. Northwest Mutual life insurance policy (face amount $134,032) — $10,000 CT Page 12757
7. IRA — $9,818
8. Pension — $59,806
C. Joint Assets
 1. Residence at 167 Moose Hill Road, Oxford, CT — net equity $190,000 ($87,000 first mortgage outstanding and $10,000 second mortgage outstanding)
2. Cascades, Orlando, FL, time share — $12,000
3. People's Bank checking account — $600
4. 1998 Honda Civic — $6,000
5. 1998 Honda Accord — $6,500 net equity ($2,000 loan outstanding)
 6. Miscellaneous furnishings, tools, appliances, equipment, decorative items
D. Plaintiff's Debts
1. Peoples Bank loan — $7,800
2. Capital One card — $6,000
3. Harris Bank card — $5,000
E. Defendant's Debts
1. Bridgeport Credit Union loan — $7,820
2. VISA card — $1,000
3. Discovery card — $7,000
4. Dr. Mark Previtt (orthodontist) — $3,000
5. Dinan Dinan, P.C. — unspecified amount outstanding CT Page 12758
F. Joint Debts
1. House mortgages
2. Loan balance on 1998 Honda Accord
The court has considered all the criteria of General Statutes §§46b-56, 46b-62, 46b-81, 46b-82, 46b-84 and Public Act 02-128 in light of the evidence presented. The following are the orders of the court:
 1. The marriage of the parties is dissolved and they are each declared to be single and unmarried.
 2. The parties shall have joint legal custody of the minor child. Primary residence shall be with the defendant.
 3. The plaintiff shall enjoy reasonable, liberal and flexible visitation time with the minor child, including but not limited to, regular overnight visitation and sharing or alternation of major holidays as agreed by the parties.
 4. Each party shall have two weeks of exclusive vacation with the child in the summer. In even numbered years, the plaintiff shall notify the defendant no later than March 1 of his choice of the two weeks. In odd numbered years, the defendant shall notify the plaintiff no later than March 1 of her choice of the two weeks.
 5. Beginning immediately upon his vacating of the marital residence, the plaintiff shall pay in advance child support in the amount of $143 per week in accordance with the child support guidelines of the State of Connecticut. The wage execution shall be contingent in accordance with the request of the parties.
6. So long as the obligation to pay child support continues, each party shall provide to the other a copy of his or her federal income tax return for the immediate previous tax year, together with all schedules and attachments, on or before May 1 each year beginning May 1, 2003. CT Page 12759
 7. The defendant shall maintain the child on her medical, dental and hospitalization insurance coverage as long as that coverage is available to her through her employment. If such coverage is not available to her, the plaintiff shall provide said coverage if available to him through his employment. If medical and hospitalization is not available to either party through employment, the parties shall share equally the cost of providing such coverage for the benefit of the minor child. The provisions of General Statutes § 46b-84 (e) shall apply.
 8. Each party shall be responsible for his or her own health care and insurance.
 9. Unreimbursed medical, dental, optical, orthodontia, hospitalization, psychological and prescriptive medication costs for the minor child shall be borne forty percent by the plaintiff and sixty percent by the defendant.
 10. The parties shall share equally the cost for four years of college education for their child, including room, board, tuition and books. The obligation of the parties shall not extend beyond the cost of the University of Connecticut at Storrs at the time the child attends college and shall not extend beyond the child's age of twenty-three. The payments of the parties are intended to supplement any cash accounts, stocks, bonds or other funds owned by or for the child at the time he attends college. Those assets for the benefit of the child shall be utilized in equal segments over four years, leaving the parties responsible for the balance each year.
11. Each party shall pay spousal support to the other in the amount of $1 per year. The amount of that support shall be modifiable only in the event that a party is unable to work full-time in his or her usual occupation because of poor health. The amount of alimony shall not be subject to modification for any other reason. CT Page 12760
 12. The plaintiff shall name the defendant as trustee for the child as the sole beneficiary on his existing Northwest Mutual life insurance policy in the minimum face amount of $172,741 until the child has completed four years of college or attained the age of twenty-three, whichever shall occur sooner. He shall maintain that policy in good standing and shall not hypothecate that policy. The plaintiff shall retain ownership of the policy.
 13. The defendant shall name the plaintiff as trustee for the child as the sole beneficiary on her existing Northwest Mutual life insurance policy in the minimum face amount of $134,032 until the child has completed four years of college or attained the age of twenty-three, whichever shall occur sooner. She shall maintain that policy in good standing and shall not hypothecate that policy. The defendant shall retain ownership of the policy.
 14. The defendant is awarded sole right, title and interest in and to the real property at 167 Moose Hill Road, Oxford, Connecticut. The defendant shall indemnify and save the plaintiff harmless as to all expenses stemming from the ownership and operation of said residence, including but not limited to, the mortgages, taxes, homeowners insurance, maintenance, repairs and utilities. The defendant shall refinance the residence or sell it on or before October 10, 2003, so as to remove the plaintiff from any liability on the mortgage. The defendant shall cause a suitable quitclaim deed to be prepared for execution by the plaintiff and for recording by the defendant. The defendant shall be entitled to claim for income tax purposes all mortgage interest and real property tax deductions relating to the said real property for the tax year 2002.
15. The plaintiff is awarded $40,000 of equity in the real property at 167 Moose Hill Road, Oxford in the form of a promissory note to be executed by CT Page 12761 the defendant as maker in favor of the plaintiff as holder and secured by a third mortgage/encumbrance on the real property. The note shall earn no interest. It shall become due and payable upon the death of the defendant; the permanent change in residence of the defendant away from the real property; the sale of the real property; the refinance of the real property; or October 8, 2003, whichever event shall occur soonest. The note and mortgage deed shall be prepared at the expense of the plaintiff and shall be recorded on the land records at the expense of the plaintiff
16. The defendant shall retain the Fountains, Orlando, Florida time-share.
 17. The plaintiff is awarded the Cascades, Orlando, Florida time-share. The plaintiff shall cause a suitable quitclaim deed to be prepared for execution by the defendant and for recording by the plaintiff.
 18. The plaintiff shall forthwith transfer to the defendant all of his right, title and interest in and to the 1998 Honda Accord automobile. The plaintiff shall transfer forthwith to the defendant all of her right, title and interest in and to the 1998 Honda Civic automobile. Each party shall save the other harmless as to all loans, taxes, costs and expenses associated with his or her own motor vehicle after the transfers.
 19. The plaintiff is awarded $45,000 of the defendant's 403b plan through her place of employment as of this date plus any earnings or losses on that amount from this date until the actual transfer of funds. The plaintiff shall be responsible for the preparation and delivery of any Domestic Relations Order necessary to effectuate the transfer of this asset. The balance of the defendant's 403b asset is awarded solely to the defendant.
20. The defendant shall retain sole rights to her CT Page 12762 pension plan (defined benefit plan) through her place of employment. The plaintiff's claim to that plan, whether as survivor or beneficiary or otherwise, is entirely extinguished.
 21. The plaintiff shall retain sole rights to his 401 (k) asset (defined contribution plan) through his place of employment. The defendant's claim to that plan, whether as survivor or beneficiary or otherwise, is entirely extinguished.
 22. The defendant shall retain sole ownership of her Individual Retirement Account as shown on her financial affidavit of September 25, 2002.
 23. As to bank accounts, investments, and tangible personal property not specifically allocated by this court herein and listed on the parties' financial affidavits dated September 25, 2002, each party shall retain the items and assets listed on his or her own affidavit.
 24. The plaintiff shall vacate the residence at 167 Moose Hill Road, Oxford, Connecticut no later than December 1, 2002. If the parties are unable to agreed on a division of their tangible personal property now at that residence, they shall use the mediation services of the Family Relations Office at the Milford Superior Court. This court shall retain jurisdiction for the division of tangible personal property in the event of a failure of the parties to resolve differences on the division of tangible personal property.
 25. Each party shall be solely responsible for all debts showing on his or her own financial affidavit submitted at the time of the final divorce hearing and shall indemnify and save harmless the other party therefrom. In particular, the plaintiff shall be solely responsible for the Harris Bank debt.
26. Each party shall be responsible for payment of his or her own legal counsel fees associated with this matter. CT Page 12763
 27. The plaintiff shall be entitled to claim the child, Eric Robert Jolly, as a dependant for income tax exemption purposes in all even-numbered tax years, beginning with the year 2002; the defendant shall be entitled to claim the child as a dependant for income tax exemption purposes in all odd-numbered tax years, beginning with the year 2003.
Winslow, J. CT Page 12764